**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2363

CRISTINA FERNANDEZ CRUZ,

        Plaintiff - Appellant,

  v.

NILDA J. MAYPA; MICHELLE BARBA, a/k/a Michelle Maypa; FERDINAND BARBA,

        Defendants – Appellees.

-------------------------------

DAMAYAN MIGRANT WORKERS ASSOCIATION, INC.; FREEDOM NETWORK (USA); SENATOR MARCO RUBIO,

        Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:13-cv-00862-CMH-IDD)

Argued: September 17, 2014         Decided: December 1, 2014

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Agee and Judge Keenan joined.

**ARGUED:** Christopher Brett Leach, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. Timothy Joseph Battle,

Alexandria, Virginia, for Appellees. **ON BRIEF:** Dana Sussman, SAFE HORIZON, Brooklyn, New York; Joseph D. West, W. Jeremy Robison, Marisa C. Maleck, Kathryn E. Hoover, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. Mark B. Helm, Amelia L.B. Sargent, Los Angeles, California, Ellen M. Richmond, Nathan M. Rehn, MUNGER, TOLLES & OLSON LLP, San Francisco, California, for Amici Damayan Migrant Workers Association, Inc., and Freedom Network (USA). Traci Lovitt, Boston, Massachusetts, Alison B. Marshall, Washington, D.C., Rachel S. Bloomekatz, JONES DAY, Columbus, Ohio, for Amicus Senator Marco Rubio.

GREGORY, Circuit Judge:

Cristina Fernandez Cruz appeals the dismissal of her claims against defendants-appellees Nilda J. Maypa, Michelle Barba ("Mrs. Barba"), and Ferdinand Barba ("Mr. Barba") under the Victims of Trafficking and Violence Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1590, 1595 (2012), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 216 (2012), and Virginia contract law. Cruz alleges that she was forced to work for the defendants for wages well below the minimum from 2002 until her escape in 2008. The district court dismissed all of her claims as time-barred. We affirm the district court's dismissal of Cruz's state law claims, but we reverse the dismissal of her TVPA and FLSA claims and remand for further proceedings.

I.

Because we are reviewing a grant of a motion to dismiss, we must take the following facts in the light most favorable to the plaintiff. McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 554 (4th Cir. 2013). Cruz is a citizen of the Philippines, where she lived until 2002. She speaks Tagalog and Kapampangan fluently, and speaks limited English. Cruz is the primary provider for her young daughter and her elderly parents, all of whom reside in the Philippines. In 2001, a friend told Cruz about an opportunity to travel to the United States to work for

Maypa, who at the time was an employee of the World Bank. Cruz submitted her resume, and Maypa hired her soon after. About a month later, Maypa faxed Cruz an employment contract, which provided that Cruz would be employed as a domestic employee at Maypa's residence for two years at a rate of $6.50 an hour. It stated that Cruz would work between 35 and 40 hours per week, have at least one full day off each week, accumulate two sick days per year, have heavily subsidized medical insurance, and receive full compensation for her travel to and from the Philippines.

Cruz reviewed the contract with the help of friends and neighbors who were more fluent in English, and she was excited about the terms. But before Cruz could sign, Maypa informed her over the phone that she would be paying Cruz only $250 a month rather than the $6.50 per hour specified in the contract. Cruz did not know that U.S. law requires a significantly higher minimum wage. She signed the contract on January 17, 2002. Maypa arranged for Cruz to obtain a visa and a passport, and on March 17, 2002, Cruz left the Philippines for the first time and flew to the United States.

Soon after arriving in Virginia, it became clear to Cruz that Maypa had misrepresented her working and living conditions. Cruz was required to work seven days a week for 17 to 18 hours per day, and she was expected to remain on call at night. Cruz

4

was never allowed to take a day off in the six years she remained under the defendants' control, even when she was ill. When Cruz first arrived there were eight people living in Maypa's house: Maypa, Maypa's daughter Mrs. Barba, her husband Mr. Barba, their four children, and Maypa's adult son. Cruz was expected to cook and do laundry for this entire family, and to clean their four-bedroom, three-bathroom home. About a year after Cruz's arrival, the Barbas moved to a separate four-bedroom, three-bathroom home. From then on Cruz lived with the Barbas but continued to clean Maypa's home once a week as well. Throughout this time Cruz was expected to provide 24-hour care for all four of the Barbas' children. Cruz was also directed to maintain the Maypa and Barba properties by mowing the lawns, trimming trees, shoveling snow, cleaning the pool, and performing other landscaping duties. For her constant labor, Cruz initially was paid a mere $250 per month, or approximately $8 per day. By the time of her escape six years later Cruz was making $450 per month, which amounted to about $15 per day. Maypa drafted and executed two contract extensions during Cruz's "employment," each of which provided for higher wages and benefits that Cruz never received. Furthermore, the defendants failed to provide Cruz with basic medical and dental care.[1]

---

[1] For example, when Cruz had a tooth infection and asked to (Continued)

5

The defendants used Cruz's immigration status and vulnerable situation to keep her in their employ. Within hours of Cruz's arrival at Maypa's home, Maypa confiscated Cruz's passport. Maypa also promised that she would renew Cruz's visa so that Cruz could visit her daughter, but Maypa never followed through on this promise. Maypa required Cruz to sign falsified time sheets and endorse "paychecks" that Cruz never received. She told Cruz that these documents were a "formality" to keep Cruz "safe." Maypa exploited Cruz's lack of knowledge about U.S. immigration laws, telling Cruz that she would be "hunted down," imprisoned, and deported if she tried to leave.

The defendants isolated Cruz from her family, friends, and culture. Cruz was dependent on them to help her call home to the Philippines, and they would not pay for Cruz's calls. When Cruz was able to call her family, the defendants monitored her conversations. They never permitted Cruz to return to the Philippines to visit her family, even when relatives died and when her daughter and father suffered life-threatening health events. The defendants also prohibited Cruz from leaving their homes alone except to walk their aggressive dog. Cruz did not know anyone in Virginia besides the defendants, and they lived

---

see a dentist, the defendants refused to take her and instead gave her medicine to numb the pain; after Cruz escaped, she had to have the tooth extracted.

in rural areas with no sidewalks and no access to public transportation. Cruz was "effectively trapped in their homes." Compl. ¶ 68.

In late 2007, Cruz's fear of being trapped with the defendants for the rest of her life began to outweigh her fear of the repercussions of escaping. She contacted a friend living in the United States, who gave her the contact information for someone who could help her escape. On January 17, 2008, Cruz gathered all of the papers she could find related to her employment and immigration status, ran out of the Barbas' home, and got into a waiting van.

Cruz's ordeal has had prolonged adverse effects on her mental, emotional, and physical health. She has experienced depression and anxiety and has difficulty sleeping. Her stress has led to high blood pressure and back pain, and she has developed asthma, allergies, and gastroesophageal reflux since being brought to the United States.

Cruz filed this lawsuit on July 16, 2013, in the United States District Court for the Eastern District of Virginia, seeking compensatory and punitive damages for the defendants' violations of the TVPA, the FLSA, and state law prohibiting breach of contract, fraudulent misrepresentation, and false

7

imprisonment.[2] The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the district court dismissed all of Cruz's claims as time-barred. On appeal, Cruz argues that her TVPA claims should be subject to the ten-year statute of limitations enacted in 2008;[3] that her FLSA claim should be equitably tolled under the actual notice rule set forth by this Court in Vance v. Whirlpool Corp., 716 F.2d 1010 (4th Cir. 1983); and that her breach of contract claims should be equitably tolled because the defendants interfered with her ability to file a lawsuit.

II.

We review de novo the district court's grant of a motion to dismiss. McCauley, 710 F.3d at 554. The defendants agree with this standard with respect to some of Cruz's claims, but contend that we should review the district court's rejection of Cruz's equitable tolling arguments only for abuse of discretion. While that is typically the correct standard, see, e.g., Baldwin v. City of Greensboro, 714 F.3d 828, 833 (4th Cir. 2013) ("We

---

[2] Cruz does not appeal the dismissal of her claims for fraudulent misrepresentation and false imprisonment.

[3] Cruz argues in the alternative that her TVPA claims should be equitably tolled until four years before her lawsuit, but we need not reach that argument because we find that the ten-year statute of limitations applies to any claims that were unexpired at the time of enactment.

8

review a district court's decisions on equitable tolling for abuse of discretion." (citing Rouse v. Lee, 339 F.3d 238, 247 n.6 (4th Cir. 2003) (en banc))); Chao v. Va. Dep't of Transp., 291 F.3d 276, 279-80 (4th Cir. 2002), this Court has indicated that "to the extent a challenge to the denial of tolling 'is not to the existence of certain facts, but instead rests on whether those facts demonstrate a failure to bring a timely claim, resolution [of this challenge] . . . turns on questions of law which are reviewed de novo,'" Smith v. Pennington, 352 F.3d 884, 892 (4th Cir. 2003) (alterations in original) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).[4] Because the district court rejected Cruz's equitable tolling arguments in the context of granting a motion to dismiss, the facts at issue were, in essence, undisputed. See Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) ("Under the motion to dismiss standard, factual allegations, once plead, must be accepted as true."). The district court denied equitable tolling as a matter of law, and therefore we review all of the court's determinations de novo.

---

[4] In Baldwin, this Court reviewed a denial of equitable tolling as a matter of law under the abuse of discretion standard. 714 F.3d at 833 (reviewing grant of summary judgment). This is contrary to Smith's pronouncement that we review the denial of tolling de novo "where the relevant facts are undisputed and the district court denied equitable tolling as a matter of law." 352 F.3d at 892. Baldwin does not explicitly reject or even refer to Smith. Therefore, we follow the rule in Smith, which is directly on point here.

9

III.

Cruz alleges that the defendants violated the TVPA by knowingly obtaining her labor 1) by means of threats; 2) by holding her in a position of involuntary servitude; and 3) by confiscating her passport. See 18 U.S.C. §§ 1589, 1590. At the time these alleged violations took place, the TVPA was governed by a four-year statute of limitations. See Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003) (establishing a private right of action but not a statute of limitations); 28 U.S.C. § 1658(a) (2012) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."). In 2008, however, Congress amended the TVPA to include a ten-year statute of limitations. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, § 221(2)(B), 122 Stat. 5044, 5067 (codified at 18 U.S.C. § 1595(c)). Cruz argues that this ten-year limitations period applies to her TVPA claims, while the defendants maintain that such application would be impermissibly retroactive.

The framework for determining whether a statute applies retrospectively to pre-enactment conduct is set forth in Landgraf v. USI Film Products, 511 U.S. 244 (1994). The Supreme Court in Landgraf recognized that "the presumption against

10

retroactive legislation is deeply rooted in our jurisprudence," 511 U.S. at 265, but it also noted that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment," id. at 269. Therefore, Landgraf requires a three-step analysis when a case involves a statute enacted after the relevant conduct. First, the court must determine "whether Congress has expressly prescribed the statute's proper reach." Id. at 280. If so, the inquiry ends there. Id. If not, the court must decide whether the statute would operate retroactively, "i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. Finally, if the statute does have a retroactive effect, it will not apply "absent clear congressional intent favoring such a result." Id.

Because Congress has not expressly indicated the amendment's proper temporal scope,[5] we proceed to the second

---

[5] The defendants argue that the first Landgraf step precludes the ten-year limitations period's application to Cruz's TVPA claims. They assert that the 2008 TVPRA expressly provides an effective date of June 21, 2009 (180 days after enactment), and that therefore Congress has prescribed the amendment's reach. But that effective date applies only to Title IV of the Act, and therefore does not apply to the limitations period set forth in Title II. Pub. L. No. 110-457, § 407. ("This title, and the amendments made by this title, shall take effect 180 days after the date of the enactment of this Act."). Because no express effective date governs the
(Continued)

11

Landgraf step. In Baldwin, this Court applied the Landgraf framework to a limitations period extension in the Veterans' Benefit and Improvement Act ("VBIA"), enacted after the plaintiff's claims had expired under the old limitations period. 714 F.3d at 836. At the second Landgraf step, the Court found that the new statute of limitations would have an impermissible retroactive effect if applied to the plaintiff's expired claims. Id. at 836-37. The Court explained:

> Baldwin's claims expired . . . more than six months before the VBIA was enacted . . . . Thus, applying [the new limitations period] retroactively would attach a new legal consequence to the expiration of Baldwin's claim; that is, Baldwin's claims against the City would be allowed to proceed rather than be barred.

Id. at 836. This holding suggests a distinction between expired claims and claims that were alive when the new limitations period was enacted. Such a distinction makes sense for two reasons.

First, as Baldwin implies, applying a new limitations period to unexpired claims does not "attach[] new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 270. As long as the claims were alive at

---

statute of limitations, we need not reach the issue of whether such a date would serve as an explicit congressional prescription of temporal reach, but it is worth noting that the standard is "a demanding one." See Gordon v. Pete's Auto Serv. of Denbigh, Inc., 637 F.3d 454, 459 (4th Cir. 2011).

12

enactment, extending a statute of limitations does not "increase a party's liability for past conduct," id. at 280, because the party already faced liability under the shorter limitations period. Such an extension does not introduce new legal consequences, but rather merely prolongs the time during which legal consequences can occur.

Second, in the criminal context, there is a consensus that extending a limitations period before prosecution is time-barred does not run afoul of the Ex Post Facto Clause of the Constitution. See, e.g., United States v. Jeffries, 405 F.3d 682, 685 (8th Cir. 2005); United States v. Grimes, 142 F.3d 1342, 1351 (11th Cir. 1998) ("[A]ll of the circuits that have addressed the issue . . . have uniformly held that extending a limitations period before the prosecution is barred does not violate the Ex Post Facto Clause."); United States v. Brechtel, 997 F.2d 1108, 1113 (5th Cir. 1993); United States v. Taliaferro, 979 F.2d 1399, 1402 (10th Cir. 1992). This is because a defendant facing unexpired claims has never been "safe from . . . pursuit," and has always had incentive to preserve exculpatory evidence. Stogner v. California, 539 U.S. 607, 611, 631 (2003). Landgraf and the Ex Post Facto Clause are informed by the same retroactivity concerns. See Landgraf, 511 U.S. at 266 (noting that "the antiretroactivity principle finds expression in several provisions of our Constitution," including

13

the Ex Post Facto Clause). Thus, it makes sense to apply these considerations in the civil context.

We therefore hold that applying the TVPRA's extended limitations period to claims that were unexpired at the time of its enactment does not give rise to an impermissible retroactive effect under Landgraf.[6] As such, whether Cruz's TVPA claims may proceed depends on whether they were still alive under the old four-year limitations period when Congress enacted the new statute of limitations on December 23, 2008, more than four years after Cruz first arrived in the United States.

Equitable tolling is appropriate in two circumstances: first, when "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," and second, when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted). Equitable tolling is a rare remedy available only where the plaintiff has "exercise[d] due diligence in preserving [her] legal rights." Chao, 291 F.3d at

---

[6] Because the application of the ten-year limitations period to unexpired TVPA claims does not raise a retroactivity problem, we need not address the third Landsgraf step. See 511 U.S. at 280 ("If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." (emphasis added)).

14

283 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Here, Cruz has alleged that the defendants confiscated her passport, isolated her from other people, monitored her communications, and threatened that she would be imprisoned and deported if she tried to escape. Taking these facts in the light most favorable to Cruz, this virtual imprisonment prevented her from seeking legal redress until at least the date of her escape in January 2008.[7] See Deressa v. Gobena, No. 1:05CV1334, 2006 WL 335629, at *3-4 (E.D. Va. Feb. 13, 2006) (holding that plaintiff's FLSA and state law claims were tolled while she was held as a "virtual prisoner" by defendants, who threatened her with deportation and forbade her to leave their home). Because Cruz has pled facts sufficient to support the conclusion that her claims were unexpired under the old four-year limitations period when the 2008 TVPRA went into effect, the district court erred in dismissing Cruz's TVPA claims as time-barred. We remand these claims for discovery to determine whether all of Cruz's TVPA claims warrant equitable tolling until December 23, 2004, four years before the TVPRA's enactment.

---

[7] The district court did not explicitly address this particular equitable tolling argument because it assumed that Cruz's claims accrued "no later than January 17, 2008," the date of her escape. Cruz v. Maypa, 981 F. Supp. 2d 485, 488 (E.D. Va. 2013).

15

IV.

Cruz alleges that the defendants willfully violated the FLSA by failing to pay her the minimum wage required by 29 U.S.C. § 206.[8] The district court correctly applied the statute of limitations for willful violations, which is three years instead of two. See 29 U.S.C. § 255(a). The court found, however, that Cruz's claim should not be equitably tolled because she "failed to plead sufficient facts to show the extraordinary circumstances required for the doctrine . . . to be applied." Cruz v. Maypa, 981 F. Supp. 2d 485, 489 (E.D. Va. 2013).

As discussed above, equitable tolling is available when 1) "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," or 2) "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Harris, 209 F.3d at 330 (internal quotation marks omitted). Cruz asks us to evaluate this rule in light of Vance v. Whirlpool Corp., 716 F.2d 1010 (4th Cir. 1983), in which this Court found that the district court properly held that the 180-day filing requirement of the Age Discrimination in Employment Act ("ADEA") was tolled by reason of the plaintiff's employer's failure to post statutory notice of workers' rights under the Act. Id. at 1013.

---

[8] Maypa does not contest that she is an "employer" to which the FLSA applies.

16

It makes good sense to extend our reasoning in Vance to the FLSA. The notice requirements in the ADEA and the FLSA are almost identical. Compare 29 C.F.R. § 1627.10 (requiring employers to "post and keep posted in conspicuous places . . . the notice pertaining to the applicability of the [ADEA]"), with id. § 516.4 (requiring employers "post and keep posted a notice explaining the [FLSA] . . . in conspicuous places"). The purpose of these requirements is to ensure that those protected under the Acts are aware of and able to assert their rights. Although Vance tolled an administrative filing deadline rather than a statute of limitations, the FLSA lacks an equivalent administrative filing requirement; thus, the FLSA's deadline to sue is, like the ADEA's administrative filing deadline, the critical juncture at which a claimant's rights are preserved or lost. Neither the ADEA nor the FLSA inflicts statutory penalties for failure to comply with the notice requirements. See Cortez v. Medina's Landscaping, Inc., No. 00 C 6320, 2002 WL 31175471, at *5 (N.D. Ill. Sept. 30, 2002) (extending an actual notice tolling rule similar to Vance from the ADEA to the FLSA). Therefore, absent a tolling rule, employers would have no incentive to post notice since they could hide the fact of their violations from employees until any relevant claims expired.

For all of these reasons, this Court's analysis in Vance applies with equal force to the notice requirement of the FLSA.[9]

Under Vance, tolling based on lack of notice continues until the claimant retains an attorney or obtains actual knowledge of her rights. 716 F.2d at 1013. The current factual record, which is limited to the amended complaint, does not identify when Cruz first retained a lawyer or learned of her rights under the FLSA. Therefore, the district court should allow discovery on remand to determine in the first instance whether Cruz's FLSA claim was time-barred despite being equitably tolled.

V.

Cruz asserts that Maypa breached the express terms of the three employment contracts she executed with Cruz. Cruz's contract claims are governed by a five-year limitations period under Virginia law. Va. Code § 8.01-246(2). The claims accrued

---

[9] The defendants argue that notice would have been futile because the poster provided by the Wage and Hour Division is not available in Cruz's native Tagalog. Therefore, "it would make little sense to toll indefinitely the limitations period for Ms. Cruz's FLSA claim based on the Defendants' failure to post notice that Ms. Cruz would not have understood anyway." Appellees' Br. 24-25. Besides being offensive, this argument turns on a factual issue that must be construed in Cruz's favor. See McCauley, 710 F.3d at 554. Cruz has not alleged that she speaks no English, only that her English is limited. Furthermore, this argument would lead to the absurd result of affording fewer protections to non-English speaking employees.

"when the breach[es] of contract occur[red]." Id. § 8.01-230. The district court did not explicitly reject Cruz's tolling argument, but dismissed her contract claims as time-barred. Cruz, 981 F. Supp. 2d at 489.

Under Virginia law, a statute of limitations is tolled when the defendant interferes with the plaintiff's ability to seek legal redress:

> When the filing of an action is obstructed by a defendant's . . . using any . . . direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

Va. Code § 8.01-229. The Virginia Supreme Court has clarified that this provision applies beyond situations "when a defendant acts to conceal the existence of a cause of action." Newman v. Walker, 618 S.E.2d 336, 338 (Va. 2005); c.f. Daniels v. Ga.-Pac. Corp., No. 97-2670, 1998 WL 539474, at *4 (4th Cir. Aug. 25, 1998) (unpublished). For example, a claim may be tolled when a defendant prevents service of process. Newman, 618 S.E.2d at 338. When filing is obstructed through fraudulent concealment, the claim will be tolled only if the fraud consisted of affirmative acts of misrepresentation and involved "moral turpitude." Id. at 340.

Even assuming Cruz's breach of contract claims were tolled at least until her escape, she does not allege that Maypa took

19

any action to deter her from filing suit <u>after</u> her escape from the defendants.  And Cruz cannot point to any authority in which similar Virginia claims have been tolled beyond the termination of forced employment.  Cf. <u>Kiwanuka v. Bakilana</u>, 844 F. Supp. 2d 107, 119-20 (D.D.C. 2012) (tolling Virginia state law claims under D.C. tolling doctrine until plaintiff was "free from the defendants' control," before her employment ended); <u>Deressa</u>, 2006 WL 335629, at *4 (tolling Virginia state law claims under Virginia statute until plaintiff's escape).  Cruz escaped on January 17, 2008, and she filed this lawsuit more than five years later on July 16, 2013.  Therefore, the district court correctly dismissed her breach of contract claims as time-barred.

VI.

Although Cruz's state law claims are time-barred, her TVPA claims may be timely under the ten-year limitations period if they were tolled until within four years of the TVPRA's enactment, and her FLSA claim may be timely if she received actual notice of her rights within three years of filing this suit.  For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED IN PART</u>,<br><u>REVERSED IN PART</u>,<br><u>AND REMANDED</u>.